[No. 5797–6–III.   Division Three.   July 26, 1984.]

SAFECO INSURANCE COMPANY OF AMERICA, *Respondent,* v. HARRY DOTTS, ET AL, *Appellants.*

*Carl J. Oreskovich, Hemovich & Nappi, Jay E. Leipham, Glen A. Harlow,* and *Underwood, Campbell, Brock & Cerutti, P.S.,* for appellants.

*Ronald G. Morrison* and *Huppin, Ewing, Anderson & Hergert, P.S.,* for respondent.

McINTURFF, J.—James McKee, administrator of the estate of David McKee, and Harry Dotts appeal the summary judgment determination that Mr. Dotts' insurance policy did not cover his liability for the assault of David McKee. We affirm.

The facts are undisputed. Safeco Insurance Co. (Safeco) issued 22–year–old Harry Dotts a mobile homeowner's liability policy providing "personal liability" for damages due to bodily injury caused by an "occurrence". The policy definition of "occurrence" is: "An *accident,* including injurious exposure to conditions, which results, during the policy term, in bodily injury or property damage." (Italics ours.) The policy further excluded from personal liability "bodily injury or property damage which is either expected or intended from the standpoint of the insured."

During early morning hours, Mr. Dotts went to visit his girl friend. When she did not answer the door, he crawled into her home through her bedroom window. He found his girl friend and David McKee. Mr. McKee was sitting on the bed. Not paying much attention to Mr. McKee, Mr. Dotts and his girl friend went into another room where they argued. They agreed David McKee should leave. Mr. Dotts returned to the bedroom, sat down on the bed next to Mr. McKee and asked him if he would leave. Mr. McKee neither responded nor looked at Mr. Dotts.

To get Mr. McKee's "attention", Mr. Dotts began a motion to slap Mr. McKee with his open palm. Mr. McKee

started to lean back, and Mr. Dotts assertedly instinctively adjusted the motion of his arm and hand. He backhanded Mr. McKee with his open hand. Thus, the contact between Mr. Dotts' hand and Mr. McKee's face was an open–handed, backhanded slap. The contact did not mark the insured's hand or the victim's face. No other physical contact occurred. Soon, Mr. McKee left the premises seemingly unaffected by Mr. Dotts' slap.

Later that morning, Mr. McKee was taken by a friend to a Spokane hospital, where he lapsed into a coma. He died 5 days later without regaining consciousness.

A Stevens County jury convicted Mr. Dotts of second degree manslaughter and second degree assault. At that trial, Mr. Dotts testified he did not intend to hurt the deceased and he was not angry with him; Mr. Dotts just wanted to get Mr. McKee's attention.

The personal representative of David McKee's estate, his father, James McKee, brought civil suit for damages. Later, Safeco filed a separate declaratory judgment action seeking a determination it had no duty to defend Mr. Dotts and no duty to pay any judgment. Safeco, as plaintiff in the second civil action, then moved for summary judgment asking for the ruling that David McKee's death was not an "occurrence" covered by the policy. Alternatively, Safeco maintained the death was "expected" or "intended" from Mr. Dotts' viewpoint for purposes of activating the policy exclusion. Safeco's motion was granted, and James McKee and Mr. Dotts appeal.

Appellants maintain coverage exists under an "occurrence" policy for intentional acts which cause subjectively unintended resultant injuries. Mr. Dotts' policy equates an "occurrence" with an "accident". We have previously held this term is unambiguous. *See, e.g., Unigard Mut. Ins. Co. v. Spokane Sch. Dist. 81,* 20 Wn. App. 261, 579 P.2d 1015 (1978). The long–standing Washington rule in accidental death cases[1] is:

---

[1]We are not unmindful that the rule changes in the context of a products lia-

[T]o recover under a policy insuring against death or injury by accidental means, (1) it is not enough that the *result* was unusual, unexpected or unforeseen, but it must appear that the *means* were accidental; and (2) *accident is never present when a deliberate act is performed, unless some additional, unexpected, independent, and unforeseen happening occurs which produces or brings about the result of injury or death.*

(Some italics ours.) *Johnson v. Business Men's Assur. Co. of Am.*, 38 Wn.2d 245, 249, 228 P.2d 760 (1951); *see also* 166 A.L.R. 469 (1947); 29 Am. Jur. *Insurance* 706 (1960).

The parties agree the backhanded slap was a "deliberate act". Similarly, for purposes of this appeal, it is undisputed Mr. Dotts subjectively did not intend or expect the "result" of death. At oral argument, appellants maintained the record does not reveal the actual cause of death. We disagree. While the record does not reflect a medical diagnosis, it nonetheless sets forth an uninterrupted chain of events put into motion by Mr. Dotts' deliberate slap. The decedent was taken to the hospital within hours of the assault. Appellants have not presented facts in opposition to Safeco's motion for summary judgment to raise an inference that the actual cause was "independent" of the hand slap within the meaning of *Johnson*. Rather, the only facts offered by appellants to suggest a material issue of fact exists is the decedent's flinching, or leaning–back action, at the prospect of being slapped. Appellants contend this was an independent and unexpected action so as to keep the incident within the policy definition of "occurrence". This argument is unpersuasive. The victim's leaning back may have been subjectively unexpected and even unforeseeable, but it was not "independent" since it was instantly and

bility policy. With products liability, if coverage did not extend to deliberate acts, that is, deliberate product manufacture, insurance policies would be meaningless. *Yakima Cement Prods. Co. v. Great Am. Ins. Co.*, 93 Wn.2d 210, 215, 608 P.2d 254 (1980); *see also Medina v. Transamerica Ins. Co.*, 37 Wn. App. 360, 364–65, 680 P.2d 69 (1984) (City's "negligent" issuing of a building permit). The *Yakima Cement* analysis, however, is inapposite in the accidental death context absent product involvement.

directly connected to Mr. Dotts' deliberate conduct. It is not unusual to flinch at the sudden prospect of an imminent slap in the face. In *Unigard,* a minor child started a fire which resulted in extensive damage to an elementary school. Since the starting of the fire was voluntary, the extensive damage, although subjectively unintended, was held not to be unexpected, independent, and unforeseen with respect to the child. As in *Unigard,* since the slap was voluntary, the injury may not be deemed an occurrence or a separate accident.

The cases relied upon by appellants are distinguishable. *Westerland v. Argonaut Grill,* 187 Wash. 437, 60 P.2d 228 (1936), and *Gruol Constr. Co. v. Insurance Co. of N. Am.,* 11 Wn. App. 632, 524 P.2d 427 (1974) involve conduct by an employee of the insured. As stated in *Unigard,* at 265, public policy prevents an insured from benefiting from his wrongful acts, but where the intentional act was done by one other than the insured, public policy does not prevent coverage. Stated differently, an employee's intentional act is not imputed to an employer for purposes of insurance contract interpretation since the insured's only voluntary act was, at most, to negligently hire the actor.

Lastly, the appellants claim support from *Zinn v. Equitable Life Ins. Co.,* 6 Wn.2d 379, 107 P.2d 921 (1940). In that case, a doctor intentionally made a small incision in the insured's arm to withdraw blood for evaluation in the treatment of the insured's high blood pressure. The usual precautions for this routine procedure were taken, but the insured nevertheless developed blood poisoning and died from bacteria introduced into the incision. In *Zinn,* at 392, the court found an accident:

> [A]lthough the incision which afforded a channel of entry for the germs was intentionally made, the entry of the deadly germs was not normally effected, but was wholly unintentional, unforeseen, and unexpected, and it was the admission of those germs, rather than the intentional act of the doctor, which caused the death. The infection itself was as much an accident as though the insured had been struck by an automobile and killed on his way to

the hospital. The germs came from the outside into the incision, and their actions were more deadly and vicious than many visible instruments of violence.

In reaching its conclusion, the court articulated the rule which was the majority rule in 1940 as it is today, that "death is accidental, even though the means are intentional, where the results are unusual, unexpected, or unforeseen." *Zinn,* at 384. However, the *Zinn* rule predates Washington's *Johnson* corollary that an accident is "never present" when a deliberate act is performed absent an "independent" unforeseen act. Regardless, the corollary was seemingly applied in *Zinn* since it was the bacteria which was found to be the cause of death and not the intentional incision. Accordingly, *Zinn* is not helpful in the present case since the only assertedly independent cause alleged is the victim's leaning back.

Having found no material factual issue of whether Mr. McKee's death resulted from the slap, as a matter of law there was no occurrence within the meaning of the insurance policy. We therefore do not address whether the policy's exclusionary section alternatively takes the undisputed circumstances outside the definition of occurrence. It is similarly unnecessary to determine whether the insured's criminal convictions established he subjectively "expected" or "intended" to inflict bodily harm on the decedent.

The judgment of the Superior Court is affirmed.

GREEN, A.C.J., and THOMPSON, J., concur.